IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-MJ-01668-RN

**United States of America,**

v.                                                                                     **Judgment**

**Alex R. Mason,**

         Defendant.

In this criminal action, the Government charged Defendant Alex Mason with violating North Carolina General Statute § 20–138.1, driving while impaired ("DWI"), and North Carolina General Statute § 20–138.7, driving with an open container of alcohol, as assimilated by 18 U.S.C. § 13. The undersigned magistrate judge conducted a bench trial at the January 11, 2016 session of this court. For the reasons stated, the court adjudges Mason GUILTY of DWI and GUILTY of driving with an open container of alcohol based on the admissible evidence of record.

**I.  Factual Background**

This case arises from a vehicle stop on the Fort Bragg Military Reservation. On June 16, 2015, the Government issued a criminal information charging Mason with the instant offenses. D.E. 1.

The factual background is elicited from the testimony at trial. Sergeant Cara Hacker, a military police officer, was the sole witness. Audio Transcript of January 11, 2016 Bench Trial at 9:47:00–05. Sgt. Hacker stated that she has been a traffic investigator for approximately three and one-half years. *Id.* at 9:48:00–05. Part of her duties include DWI enforcement. *Id.* at

9:48:33–47. Additionally, she has received training in in standard field sobriety testing through a course endorsed by the National Highway Traffic Safety Administration ("NHTSA"). *Id.* at 9:49:07–18; 9:50:42–53.

On January 4, 2015, at approximately 1:40 a.m., Mason's car approached Access Control Point 11 on Ft. Bragg. *Id.* at 9:53:00–20. Sgt. Hacker testified that Mason's car was playing music loudly. *Id.* at 9:53:21–25. Sgt. Hacker further testified that she observed Mason having difficulty swiping his access card to get onto the base. *Id.* at 9:59:06–16. As she approached the car, she asked Mason for a second time to turn down his music, as that area of the base had many residential buildings. *Id.* at 9:57:20–23; 9:57:52–58; 9:58:14–21; 9:59:35–41; 10:57:01–05.

Sgt. Hacker also stated that when she came upon his car, she detected an odor of alcohol and observed that Mason had watery, bloodshot eyes. *Id.* at 9:59:55–10:00:04; 11:39:11–17. Sgt. Hacker further testified that she noticed three (3) open containers of Bud Light Premium in the car. *Id.* at 10:00:05–22. Sgt. Hacker stated that the three open bottles, along with three unopened bottles, were in a white plastic bag. *Id.* at 10:03:12–34; 10:05:16–19. She said that the opened bottles had very little fluid in them. *Id.* at 10:00:40–45; 10:03:41–44.

Sgt. Hacker testified that Mason stated that he was coming from Waffle House. *Id.* at 10:07:33–41. Sgt. Hacker stated that Mason was wearing a wristband which made her believe he was coming from a bar or nightclub. *Id.* at 10:07:55–10:08:07; 11:39:18–29. Sgt. Hacker testified that she asked Mason when he last consumed alcohol. *Id.* at 10:10:52–57; 11:42:11–17. Mason responded that he had been drinking that evening. *Id.* at 10:10:58–10:11:04. Sgt. Hacker then asked Mason if he would provide a breath sample and he agreed to do so. *Id.* at 10:08:58–

10:09:03. Sgt. Hacker further testified that the breath sample gave a positive result in the portable breathalyzer. *Id.* at 10:11:19–25.[1]

Sgt. Hacker testified that she next asked Mason if he would consent to field sobriety testing, and he agreed. *Id.* at 10:11:40–48. Sgt. Hacker stated that field sobriety tests are an instrument for law enforcement to use to determine is an individual is impaired. *Id.* at 10:11:56–10:12:09.

Sgt. Hacker administered the walk and turn field sobriety test. *Id.* at 10:13:25–30. Sgt. Hacker testified that this test could show clues of impairment if the test subject cannot not keep his arms down by his side, takes the wrong number of steps, fails to count steps aloud as directed, or fails to stay on a line. *Id*. at 10:14:30–45. Sgt. Hacker said that when performing this test, Mason took the incorrect number of steps and failed to turn correctly. *Id.* at 10:14:55–10:15:05. She stated that Mason also stopped walking during the test. *Id.* at 10:16:01–15.

The next test administered was the one-leg stand. *Id.* at 10:16:38–10:17:35. Clues of impairment on this test include dropping one's foot, swaying or hopping, and an inability to keep one's arms at one's side. *Id.* at 10:17:43–59. Sgt. Hacker stated that when performing this test, Mason exhibited clues that he was impaired, including failing to count, swaying, and failing to raise his foot six (6) inches off the ground. *Id.* at 10:18:01–47.

Sgt. Hacker memorialized her observations in the DD Form 1920. *Id.* at 10:18:54–10:19:09; 10:20:00–14. She stated that the DD Form 1920 was a fair and accurate representation of her observations with respect to Mason and the field sobriety testing. *Id.* at 10:20:57–10:21:05; 10:21:17–21. Sgt. Hacker concluded that Mason's level of intoxication was too great

---

[1] The results of a PBT are not admissible as evidence but can establish probable cause. *United States v. Van Hazel*, 468 F. Supp. 2d. 792, 797–98 (E.D.N.C. 2006).

to safely operate a vehicle. *Id.* at 10:22:07–22. She based this on several factors, including the clues on the filed sobriety tests; his inability to follow a directive when he was asked to turn down his music; his difficulty swiping his access card; the fact that he admitted to drinking that night; and the opened bottles of alcohol in his car. *Id.* at 11:41:45–11:42:24. Sgt. Hacker stated that she made this determination based on her training and Mason's performance of the tests. *Id.* at 10:22:23–30.

Sgt. Hacker then transported Mason to the Ft. Bragg Provost Marshal's Office. *Id.* at 10:22:35–45. This was done with the purpose of giving Mason his implied consent rights and administering the Intoximeter[2] breath test. *Id.* at 10:22:58–10:23:07. She gave Mason the implied consent rights form, form DHHS 4081, which advised him of his rights. *Id.* at 10:23:55–58; 10:24:17–29. She also read Form DHHS 4081 to Mason. *Id.* at 10:24:30–38. Mason signed the form acknowledging that he had been advised of his rights. *Id.* at 10:24:52–55. He also stated that he understood his rights. *Id.* at 11:22:36–40. The Intoximeter test (Intox EC/IR II) was administered and the results were that Mason's two samples were both 0.08 (breath alcohol concentration). *Id.* at 10:31:31–38; 10:31:59–10:32:03; 11:44:05–09.

**II.    Analysis**

    **A.    Legal Standard**

Mason is charged with violating North Carolina General Statutes §§ 20-138.1 and 20-138.7. Under the ACA, conduct occurring on land under the special maritime and territorial jurisdiction of the United States that is not expressly prohibited by federal law is governed by the penal laws of the state where the land is located. *United States v. Minger*, 976 F.2d 185, 187 (4th

---

[2] The Intoximeter is an instrument approved by the National Highway Traffic Safety Administration ("NHTSA") as conforming to the model specifications for evidential breath alcohol measurement devices. *United States v. Ahlstrom*, 530 F. App'x 232, 239 (4th Cir. 2013).

4

Cir. 1992). "When a state law is assimilated under the ACA, the ACA transforms the state law into a federal law for purposes of prosecution, and any violation of the state law becomes a crime against the United States." *Id.* "The ACA assimilates the entire substantive criminal law of the state, including laws relating to the definition and scope of an offense and laws governing the manner in which an offense is to be punished." *United States v. King*, 824 F.2d 313, 315 (4th Cir. 1987). The federal courts therefore look to state law to determine the elements of the state crime assimilated. *Id.*; *United States v. Price*, 812 F.2d 174, 175 (4th Cir. 1987). However, the ACA does not adopt state procedural rules or rules of evidence. *See e.g., Price*, 812 F.2d at 175; *United States v. Card*, No. 90–5313, 1991 U.S. App. LEXIS 1327, at *3, 1991 WL 8478 (4th Cir. Jan. 31, 1991) (unpublished); *Kay v. United States*, 255 F.2d 476, 479 (4th Cir. 1958).

Here, Mason is charged with violating N.C. Gen. Stat. § 20–138.1 (DWI). In relevant part, section 20–138.1 provides: "[a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State . . . [w]hile under the influence of an impairing substance." N.C. Gen. Stat. § 20–138(a)(1).

To prove Mason guilty of DWI, the Government must establish the following three elements beyond a reasonable doubt: (1) that Mason was driving a vehicle; (2) that he was driving that vehicle upon a street, highway, or public vehicular area on Fort Bragg Military Reservation, an area in North Carolina within the special maritime and territorial jurisdiction of the United States; and (3) that at the time Mason was driving the vehicle, he was under the influence of an impairing substance. *See* N.C. Gen. Stat. § 20–138(a)(1); *see also* N.C.P.I.-Crim. 270.20; 18 U.S.C. § 13(a). Here, only the third element, that Mason was under the influence of an impairing substance, is disputed. Audio Transcript of January 11, 2016 Bench Trial at 9:46:00–14; 9:53:14–33.

5

An impairing substance includes alcohol. N.C. Gen. Stat. § 20–4.01(14a). "A person is under the influence of an impairing substance when he has taken (or consumed) a sufficient quantity of that impairing substance to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is an appreciable impairment of either or both of these faculties." N.C.P.I.-Crim. 270.20; *see also* N.C. Gen. Stat. § 20–4.01(48b) (defining "under the influence of an impairing substance" as "[t]he state of a person having his physical or mental faculties, or both, appreciably impaired by an impairing substance"). "The fact that a motorist has been drinking, when considered in connection with faulty driving or other conduct indicating an impairment of physical and mental faculties, is sufficient prima facie" to show appreciable impairment. *State v. Norton*, 231 N.C. App. 75, 79, 712 S.E.2d 387, 390 (2011) (internal quotation marks omitted) (quoting *State v. Coffey*, 189 N.C. App. 382, 387, 658 S.E.2d 73, 76 (2008)). A person will also be found guilty of driving while impaired if he drives on public roads "[a]fter having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of .08 or more." N.C. Gen. Stat. § 20-138.1 (1989).

Mason is also charged with transporting an open container of an alcoholic beverage. Under section 20-138.7, "[n]o person shall drive a motor vehicle on a highway or the right-of-way of a highway: (1) [w]hile there is an alcoholic beverage in the passenger area in other than the unopened manufacturer's original container; and (2) [w]hile the driver is consuming alcohol or while alcohol remains in the driver's body." N.C. Gen. Stat. § 20–137.8(a). To prove Mason guilty of the open container violation, the Government must show: (1) that Mason was operating a motor vehicle on a public road or highway; (2) there was an opened alcoholic beverage in the passenger area; and (3) while alcohol remained in Mason's body.

### B. The Government Proved Beyond A Reasonable Doubt That Defendant Violated N.C. Gen. Stat. § 20–138.1

At the bench trial, the Government presented testimony concerning Mason's impairment while operating a motor vehicle. Military reservations, such as Fort Bragg, are within the special maritime and territorial jurisdiction of the United States, *see* 18 U.S.C. § 7(3) (defining "special maritime and territorial jurisdiction of the United States"). The evidence summarized below establishes beyond a reasonable doubt that Mason drove while under the influence of alcohol, an impairing substance.

The Government presented evidence that Mason had watery, bloodshot eyes and that there was an odor of alcohol in the car. Mason admitted he had been at drinking that evening. He consented to perform field sobriety tests. During the testing, Mason gave several clues indicating he was impaired, including failing to follow the test instructions. After being transported to the Provost Marshal's Office, Mason was tested with an Intoximeter. Two breath samples he gave indicated a breath alcohol concentration of 0.08. Accordingly, military police concluded that Mason's level of intoxication was too great to safely operate a motor vehicle.

Under N.C. Gen. Stat. § 20–138.1, "[t]he results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration." *Id.* "Chemical analysis" is defined as "[a] test or tests of the breath, blood, or other bodily fluid or substance of a person to determine the person's alcohol concentration or presence of an impairing substance, performed in accordance with G.S. § 20-139.1, including duplicate or sequential analysis." § 20-4.01(3a) (2009). A chemical analysis of the breath is properly performed when "the test results from any two consecutive collected breath samples do not differ from each other by an alcohol concentration of greater than .02. Only the lower of the two test results of the consecutively administered tests can be used to prove a particular alcohol concentration." § 20-139.1(b3).

7

Once a chemical analysis is determined valid, a reading at or above the statutorily proscribed level is sufficient to satisfy the State's burden of proof as to alcohol concentration. *State v. Shuping*, 312 N.C. 421, 431 (1984). As to the question of whether additional factors are necessary to show impaired driving, the North Carolina Court of Appeals explains the point well:

> [T]hough such factors may be weighed by the trial court before sentencing . . . it is not necessary for the state to prove that Defendant was appreciably impaired, uncooperative, or driving in an unsafe manner in order to prove that Defendant is guilty of a violation of N.C. Gen. Stat. 20-138.1(a2). To prove guilt, the state need only show that Defendant had an alcohol concentration of .08 or more while driving when stopped, that he was given the [breathalyzer] test in the manner described and passed upon by us above, and that the result of this duly administered chemical analysis was .08 in two successive tests.

*State v. Arrington*, 714 S.E.2d 777, 780–81, 215 N.C. App. 161, 165 (2011). No factors beyond blowing a 0.08 are necessary.

The admissible trial evidence establishes beyond a reasonable doubt that on January 4, 2015, Mason was driving a vehicle while under the influence of alcohol in violation of North Carolina General Statute § 20–138.1. Evidence showing that Mason was under the influence of alcohol includes the following: (1) Mason had difficulty swiping his base access card; (2) he had bloodshot, watery eyes; (3) there was an odor of alcohol coming from the car; (4) Mason stated that he had consumed alcohol that evening; (5) there were open containers of alcohol in the car; (6) Mason was unable to perform the field sobriety tests as directed; and (7) the results of two breath samples on the Intoximeter indicated a breath alcohol concentration of 0.08.

Mason has offered no evidence that the results of the Intoxilyzer breath test were invalid or otherwise unreliable. The two breath samples provided by Mason both demonstrated a breath alcohol concentration of 0.08. The testing and the results comply with the statutory requirements. Under *Arrington*, these results, alone, are sufficient to establish his guilt.

North Carolina courts have upheld impaired driving convictions under similar circumstances. *See, e.g., State v. Townsend,* 762 S.E.2d 898, --- N.C. App. ---- (N.C. Ct. App. 2014) (finding no error in the defendant's conviction of DWI where the defendant had bloodshot, watery eyes, an odor of alcohol, and a 0.09 on the Intoximeter test). For all these reasons, the undersigned concludes that the government met its burden of proving beyond a reasonable doubt that Mason violated North Carolina General Statute § 20–138.1.

### B. The Government Proved Beyond A Reasonable Doubt That Defendant Violated N.C. Gen. Stat. § 20–138.7

At the bench trial, the Government presented testimony concerning Mason's operation of a motor vehicle with open containers in the car. Sgt. Hacker testified that as she came to Mason's car, she noticed three (3) open bottles, along with three (3) unopened bottles, in a white plastic bag in the car. She stated that the bottles were labeled Bud Light Platinum. Sgt. Hacker further stated that the three open containers had very little alcohol remaining in them. Although Mason challenged Sgt. Hacker's observation of the open containers, she stated that the containers were in a bag, that the bag was open at the top, and that she could see three open bottles. Tr. at 10:05:10–33.

Along with the discussion above, the evidence establishes that (1) Mason was driving a motor vehicle; (2) he operated the car on a highway or public road; (3) he operated the car while alcohol remained in his body; (4) there were alcoholic beverage in the passenger area; (5) the bottles were in the manufacturer's original container; and (6) three of the bottles were not unopened. Mason presented no evidence refuting this Sgt. Hacker's testimony on these factors. Instead, he only challenged whether bottles in car were visible while in white plastic bag. As noted above, Sgt. Hacker testified that the open bottles were visible.

9

**III.    Sentencing**

The Government has shown by proof beyond a reasonable doubt that Mason committed both offenses set out in the criminal Information. Therefore, Mason is adjudged guilty of Counts One and Two.

The Court shall schedule by separate notice the date, time, and place of the sentencing hearing for Defendant on his convictions for violations of North Carolina General Statutes §§ 20–138.1 and 20.138.7, as assimilated by 18 U.S.C. § 13(a).

SO ORDERED

Dated: April 5, 2016.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE